UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CIV 4063

---

|  |  |
|---|---|
| PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 630 PENSION-ANNUITY TRUST FUND, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. |
|  | CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS |
| Plaintiff, | JURY TRIAL DEMANDED |
| vs. |  |
| ARBITRON, INC., STEPHEN B. MORRIS and SEAN R. CREAMER, |  |
| Defendants. |  |



RECEIVED
APR 30 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Arbitron, Inc. ("Arbitron" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of purchasers of the common stock of Arbitron between July 19, 2007 and November 26, 2007, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1337 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

4.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

5.      In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

6.    Plaintiff Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund, as set forth in the accompanying certification, incorporated by reference herein, purchased the common stock of Arbitron at artificially inflated prices during the Class Period and has been damaged thereby.

7.    Defendant Arbitron is a Delaware corporation with its principal place of business located at 142 West 57th Street, New York, NY 10019. The Company, through its subsidiaries, provides media and marketing information services in the United States and internationally.

8.    (a)    Defendant Stephen B. Morris ("Morris") is, and was at all relevant times, Arbitron's Chairman, Chief Executive Officer ("CEO") and President.

(b)    Defendant Sean R. Creamer ("Creamer") is, and was at all relevant times, Arbitron's Chief Financial Officer ("CFO").

(c)    Defendants Morris and Creamer are collectively referred to herein as the "Individual Defendants."

9.    Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

10.    As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the New York Stock Exchange ("NYSE"), and governed by the provisions of the federal securities laws,

the Individual Defendants each had a duty to disseminate prompt, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

11.    The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

12.    Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of Arbitron common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (i) deceived the investing public regarding Arbitron's business, operations, management and the intrinsic value of Arbitron common stock; (ii) enabled the Individual Defendants and other Arbitron insiders to sell 178,879 shares of their personally-held Arbitron common stock for gross proceeds in excess of $8.9 million; and (iii) caused Plaintiff and other members of the Class to purchase Arbitron's common stock at artificially inflated prices.

- 3 -

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

13.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the common stock of Arbitron between July 19, 2007 and November 26, 2007, inclusive ("the Class") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

14.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Arbitron common shares were actively traded on the NYSE. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Arbitron or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

15.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

16.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

17.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- 4 -

(a)    whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)    whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Arbitron; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

18.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

19.    Defendant Arbitron describes itself as an "international media and marketing information firm serving radio broadcasters, cable companies, advertisers, advertising agencies and out of home and online media advertising companies in the United States and Europe." The Company's Portable People Meter ratings service is purportedly capable of measuring radio, broadcast television, cable television, Internet broadcasts, satellite radio and television audiences, and retail store video and audio broadcasts.

20.    The Class Period begins on July 19, 2007. On that date, Arbitron issued a press release announcing its financial results for the second quarter of 2007, the period ended June 30, 2007. For the quarter, the Company reported revenue of $79.0 million and net income of $3.8 million, or $0.13 per share (diluted). Defendant Morris, commenting on the results, stated, in pertinent part, as follows:

Since the end of the 1st quarter, we signed long term contracts for the PPM ratings service with three leading radio groups: Clear Channel, Cox Radio and Entravision Communications. These contracts, along with the agreements with more than a dozen other major broadcasters and numerous advertising agencies that we had already signed, allow us to focus all our energy on executing the rollout of the PPM ratings service in the top 50 markets.

Two markets-Philadelphia and Houston-have already completed the switch to PPM ratings as the currency in the market. *We are also well into the process of installing the PPM service in the three largest and most complex radio markets: New York, Los Angeles and Chicago, and our progress to date has been good.* We are currently on schedule, but each market presents its own set of challenges. It is difficult and exacting work to recruit representative panels of consumers in these extremely diverse markets.

For Project Apollo, our initiative with The Nielsen Company to develop new measures of advertising return-on-investment, our pilot subscribers continue to evaluate the Project Apollo value proposition in the context of their particular company's marketing needs. Our goal remains to reach a decision about implementation in the second half of the year. [Emphasis added.]

With regard to the Company's financial outlook, the press release stated in pertinent part as follows:

Arbitron is reiterating its previously issued revenue guidance for the full year 2007 and is updating the earnings per share guidance.

The Company continues to expect that revenue will increase between 5.5 percent and 7.5 percent in 2007 compared to last year.

Based on recently completed contract negotiations as well as on the Company's current experience with the recruitment and management of the PPM panels in the 2007 and 2008 rollout markets, earnings per share (diluted) is expected to be between $1.35 and $1.45 for the full year 2007. This compares to the previous estimate of $1.30 to $1.50 per fully diluted share for 2007.

21.    On October 18, 2007, Arbitron issued a press release announcing its financial results for the third quarter of 2007, the period ended September 30, 2007.  For the quarter, the Company reported revenue of $96.5 million and net income of $17.2 million, or $0.58 per share (diluted). Defendant Morris, commenting on the results, stated, in pertinent part, as follows:

- 6 -

While the PPM commercialization is both complex and challenging, we have been able to stay on track with our ambitious market-by-market rollout schedule for the Portable People Meter ratings service. On September 20, we launched the 'pre-currency' survey period in New York and the embedded radio markets of Nassau-Suffolk and Middlesex-Somerset-Union. *These three markets are scheduled to convert to Portable People Meter as full 'currency' on December 31.*

At the same time, we are recruiting consumers for Los Angeles, Riverside, Chicago, San Francisco and San Jose. While this has been logistically demanding, especially because each market has its own unique characteristics, *we're committed to converting these markets as scheduled.*

For Project Apollo, we announced last week that we are extending the pilot evaluation period into the first quarter of 2008. This extension has the full support of our seven pilot subscribers. The additional time will be used to address a number of specific efforts aimed at helping the members of the Project Apollo Steering Committee build the strongest possible business case for the commercialization of the proposed single-source marketing information service. [Emphasis added.]

With regard to the Company's outlook, the press release stated:

Arbitron is reiterating the revenue and earnings per share guidance for the full year 2007, which was provided by the Company on July 19, 2007.

The Company continues to expect that revenue will increase between 5.5 percent and 7.5 percent in 2007 compared to last year. Earnings per share (diluted) are expected to be between $1.35 and $1.45 for the full year 2007.

22.    In response to this announcement, over the next five trading days, the price of Arbitron stock rose $5.46 per share, or more than 12%.

23.    From October 22, 2007 to November 19, 2007, Defendant Morris and other Company insiders took advantage of the temporary inflation in the Company's stock by selling 154,334 shares and reaping more than $7.7 million in gross proceeds.

24.    The statements referenced above in ¶¶20 and 21 were each materially false and misleading when made because they failed to disclose and/or misrepresented the following adverse facts, among others:

(a)    that the Company's scheduled implementation of its Portable People Meter ratings service in certain major markets was not performing according to internal expectations and

the Company was experiencing significant difficulties such that it would have to delay its implementation; and

(b)    as a result, Defendants lacked a reasonable basis for their positive statements about the timing of the implementation of its Portable People Meter ratings service and the Company's prospects and future earnings.

25.    Then, on November 26, 2007, Arbitron Inc. announced that "it will delay the commercialization of its Portable People Meter (PPM) radio ratings service in nine markets" and that the Company would be revising its financial guidance for 2007 and outlook for 2008. With regard to the Company's outlook, the press release stated:

Revised Financial Guidance for 2007 and Outlook for 2008

As a result of its decision to delay further implementation of the Portable People Meter service, the Company is updating its previously issued guidance to reflect the resultant financial impact. Earnings per share (diluted) for 2007 are currently estimated to be between $1.30 and $1.35 as compared to its previously issued earnings per share guidance of $1.35 to $1.45.

In addition, the Company currently estimates the impact of foregone revenue and additional costs required to produce diary estimates in the affected markets will reduce 2008 earnings by $0.22 to $0.33 per share (diluted). Consistent with past practices, detailed annual revenue and earnings per share guidance will be provided in conjunction with our fourth quarter 2007 earnings release expected to be issued in February 2008.

26.    In response to this announcement, the price of Arbitron common stock declined $7.21 per share, or over 14.74%, to close at $41.70 per share, on unusually high trading volume.

27.    The market for Arbitron's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Arbitron's common stock traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Arbitron common stock

relying upon the integrity of the market price of Arbitron's common stock and market information relating to Arbitron, and have been damaged thereby.

28.    During the Class Period, defendants materially misled the investing public, thereby inflating the price of Arbitron's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

29.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Arbitron's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Arbitron and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

30.    As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in

the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding Arbitron, their control over, and/or receipt and/or modification of Arbitron's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Arbitron, participated in the fraudulent scheme alleged herein.

31.    Defendants were further motivated to engage in this course of conduct in order to allow the Individual Defendants and other Company insiders to sell 178,879 shares of their personally-held Arbitron common stock for gross proceeds in excess of $8.9 million. The following chart sets forth the insider trading:

| Insider | Date | Shares | Price | Proceeds |
|---|---|---|---|---|
| KATHLEEN ROSS | 10/10/2007 | 2,000 | $47.24 | $94,480 |
| | 10/22/2007 | 14,000 | $50.00 | $700,000 |
| | | 16,000 | | $794,480 |
| | | | | |
| LINDA DUPREE | 10/29/2007 | 1,401 | $50.41 | $70,624 |
| | 10/29/2007 | 1,300 | $49.71 | $64,623 |
| | 10/29/2007 | 1,200 | $49.70 | $59,640 |
| | 10/29/2007 | 1,029 | $49.87 | $51,316 |
| | 10/29/2007 | 800 | $49.49 | $39,592 |
| | 10/29/2007 | 800 | $49.56 | $39,648 |
| | 10/29/2007 | 600 | $49.41 | $29,646 |
| | 10/29/2007 | 600 | $49.45 | $29,670 |
| | 10/29/2007 | 600 | $49.46 | $29,676 |
| | 10/29/2007 | 600 | $49.69 | $29,814 |
| | 10/29/2007 | 600 | $49.77 | $29,862 |
| | 10/29/2007 | 523 | $49.79 | $26,040 |
| | 10/29/2007 | 500 | $49.38 | $24,690 |
| | 10/29/2007 | 500 | $49.48 | $24,740 |
| | 10/29/2007 | 500 | $49.52 | $24,760 |
| | 10/29/2007 | 500 | $49.54 | $24,770 |
| | 10/29/2007 | 471 | $49.86 | $23,484 |
| | 10/29/2007 | 434 | $49.47 | $21,470 |
| | 10/29/2007 | 400 | $49.39 | $19,756 |
| | 10/29/2007 | 400 | $49.62 | $19,848 |
| | 10/29/2007 | 400 | $49.78 | $19,912 |
| | 10/29/2007 | 400 | $50.18 | $20,072 |
| | 10/29/2007 | 334 | $49.68 | $16,593 |
| | 10/29/2007 | 300 | $49.37 | $14,811 |
| | 10/29/2007 | 300 | $49.42 | $14,826 |

| | | | | |
|---|---|---|---|---|
| | 10/29/2007 | 300 | $49.51 | $14,853 |
| | 10/29/2007 | 300 | $49.55 | $14,865 |
| | 10/29/2007 | 234 | $50.03 | $11,707 |
| | 10/29/2007 | 200 | $49.57 | $9,914 |
| | 10/29/2007 | 200 | $49.67 | $9,934 |
| | 10/29/2007 | 200 | $49.72 | $9,944 |
| | 10/29/2007 | 200 | $49.80 | $9,960 |
| | 10/29/2007 | 200 | $49.82 | $9,964 |
| | 10/29/2007 | 200 | $49.95 | $9,990 |
| | 10/29/2007 | 200 | $49.97 | $9,994 |
| | 10/29/2007 | 200 | $50.59 | $10,118 |
| | 10/29/2007 | 200 | $50.62 | $10,124 |
| | 10/29/2007 | 200 | $50.64 | $10,128 |
| | 10/29/2007 | 200 | $50.68 | $10,136 |
| | 10/29/2007 | 134 | $49.81 | $6,675 |
| | 10/29/2007 | 133 | $49.43 | $6,574 |
| | 10/29/2007 | 100 | $49.36 | $4,936 |
| | 10/29/2007 | 100 | $49.40 | $4,940 |
| | 10/29/2007 | 100 | $49.50 | $4,950 |
| | 10/29/2007 | 100 | $49.59 | $4,959 |
| | 10/29/2007 | 100 | $49.60 | $4,960 |
| | 10/29/2007 | 100 | $49.83 | $4,983 |
| | 10/29/2007 | 100 | $49.85 | $4,985 |
| | 10/29/2007 | 100 | $49.90 | $4,990 |
| | 10/29/2007 | 100 | $49.91 | $4,991 |
| | 10/29/2007 | 100 | $49.93 | $4,993 |
| | 10/29/2007 | 100 | $50.05 | $5,005 |
| | 10/29/2007 | 100 | $50.08 | $5,008 |
| | 10/29/2007 | 100 | $50.12 | $5,012 |
| | 10/29/2007 | 100 | $50.22 | $5,022 |
| | 10/29/2007 | 100 | $50.26 | $5,026 |
| | 10/29/2007 | 100 | $50.29 | $5,029 |
| | 10/29/2007 | 100 | $50.43 | $5,043 |
| | 10/29/2007 | 100 | $50.50 | $5,050 |
| | 10/29/2007 | 100 | $50.61 | $5,061 |
| | 10/29/2007 | 100 | $50.70 | $5,070 |
| | 10/29/2007 | 100 | $50.71 | $5,071 |
| | 10/29/2007 | 77 | $49.75 | $3,831 |
| | 10/29/2007 | 34 | $50.33 | $1,711 |
| | | **21,004** | | **$1,045,390** |
| | | | | |
| OWEN CHARLEBOIS | 10/24/2007 | 7,200 | $50.00 | $360,000 |
| | 10/24/2007 | 4,500 | $50.20 | $225,900 |
| | 10/24/2007 | 4,400 | $50.25 | $221,100 |
| | 10/24/2007 | 1,800 | $50.14 | $90,252 |
| | 10/24/2007 | 1,000 | $50.40 | $50,400 |
| | 10/24/2007 | 900 | $50.11 | $45,099 |
| | 10/24/2007 | 900 | $50.32 | $45,288 |
| | 10/24/2007 | 800 | $50.16 | $40,128 |
| | 10/24/2007 | 800 | $50.68 | $40,544 |
| | 10/24/2007 | 700 | $50.13 | $35,091 |
| | 10/24/2007 | 600 | $50.67 | $30,402 |

| | | | | |
|---|---|---|---|---|
| | 10/24/2007 | 500 | $50.09 | $25,045 |
| | 10/24/2007 | 500 | $50.50 | $25,250 |
| | 10/24/2007 | 500 | $50.65 | $25,325 |
| | 10/24/2007 | 400 | $50.36 | $20,144 |
| | 10/24/2007 | 400 | $50.48 | $20,192 |
| | 10/24/2007 | 400 | $50.64 | $20,256 |
| | 10/24/2007 | 300 | $50.10 | $15,030 |
| | 10/24/2007 | 300 | $50.18 | $15,054 |
| | 10/24/2007 | 300 | $50.33 | $15,099 |
| | 10/24/2007 | 300 | $50.35 | $15,105 |
| | 10/24/2007 | 200 | $50.15 | $10,030 |
| | 10/24/2007 | 200 | $50.34 | $10,068 |
| | 10/24/2007 | 200 | $50.66 | $10,132 |
| | 10/24/2007 | 200 | $50.70 | $10,140 |
| | 10/24/2007 | 200 | $50.73 | $10,146 |
| | 10/24/2007 | 100 | $50.02 | $5,002 |
| | 10/24/2007 | 100 | $50.12 | $5,012 |
| | 10/24/2007 | 100 | $50.31 | $5,031 |
| | 10/24/2007 | 100 | $50.37 | $5,037 |
| | 10/24/2007 | 100 | $50.69 | $5,069 |
| | 10/24/2007 | 100 | $50.71 | $5,071 |
| | 10/24/2007 | 100 | $50.72 | $5,072 |
| | 10/24/2007 | 100 | $50.77 | $5,077 |
| | 10/24/2007 | 100 | $50.79 | $5,079 |
| | 10/25/2007 | 2,700 | $50.00 | $135,000 |
| | 10/25/2007 | 1,200 | $50.52 | $60,624 |
| | 10/25/2007 | 1,100 | $50.09 | $55,099 |
| | 10/25/2007 | 900 | $50.51 | $45,459 |
| | 10/25/2007 | 800 | $50.15 | $40,120 |
| | 10/25/2007 | 600 | $50.23 | $30,138 |
| | 10/25/2007 | 400 | $50.40 | $20,160 |
| | 10/25/2007 | 400 | $50.42 | $20,168 |
| | 10/25/2007 | 300 | $49.55 | $14,865 |
| | 10/25/2007 | 300 | $50.16 | $15,048 |
| | 10/25/2007 | 300 | $50.17 | $15,051 |
| | 10/25/2007 | 200 | $50.12 | $10,024 |
| | 10/25/2007 | 200 | $50.27 | $10,054 |
| | 10/25/2007 | 200 | $50.31 | $10,062 |
| | 10/25/2007 | 200 | $50.44 | $10,088 |
| | 10/25/2007 | 100 | $49.75 | $4,975 |
| | 10/25/2007 | 100 | $50.07 | $5,007 |
| | 10/25/2007 | 100 | $50.10 | $5,010 |
| | 10/25/2007 | 100 | $50.11 | $5,011 |
| | 10/25/2007 | 100 | $50.14 | $5,014 |
| | 10/25/2007 | 100 | $50.16 | $5,016 |
| | 10/25/2007 | 100 | $50.28 | $5,028 |
| | 10/25/2007 | 100 | $50.50 | $5,050 |
| | | 40,000 | | $2,008,741 |
| | | | | |
| PIERRE BOUVARD | 9/21/2007 | 900 | $46.40 | $41,760 |
| | 9/21/2007 | 300 | $46.59 | $13,977 |
| | 9/21/2007 | 200 | $46.35 | $9,270 |

| | | | |
|---|---|---|---|
| 9/21/2007 | 100 | $46.33 | $4,633 |
| 9/21/2007 | 100 | $46.36 | $4,636 |
| 9/21/2007 | 100 | $46.38 | $4,638 |
| 9/21/2007 | 100 | $46.39 | $4,639 |
| 9/21/2007 | 100 | $46.46 | $4,646 |
| 9/21/2007 | 100 | $46.42 | $4,642 |
| 10/22/2007 | 9,817 | $50.00 | $490,850 |
| 10/22/2007 | 2,736 | $50.02 | $136,855 |
| 10/22/2007 | 1,500 | $50.01 | $75,015 |
| 10/22/2007 | 1,400 | $50.03 | $70,042 |
| 10/22/2007 | 900 | $50.13 | $45,117 |
| 10/22/2007 | 700 | $50.15 | $35,105 |
| 10/22/2007 | 600 | $50.05 | $30,030 |
| 10/22/2007 | 500 | $50.11 | $25,055 |
| 10/22/2007 | 400 | $50.22 | $20,088 |
| 10/22/2007 | 393 | $50.09 | $19,685 |
| 10/22/2007 | 300 | $50.08 | $15,024 |
| 10/22/2007 | 300 | $50.21 | $15,063 |
| 10/22/2007 | 200 | $50.04 | $10,008 |
| 10/22/2007 | 200 | $50.14 | $10,028 |
| 10/22/2007 | 100 | $50.07 | $5,007 |
| 10/22/2007 | 100 | $50.10 | $5,010 |
| 10/22/2007 | 100 | $50.12 | $5,012 |
| 10/22/2007 | 100 | $50.18 | $5,018 |
| 10/22/2007 | 100 | $50.19 | $5,019 |
| 10/22/2007 | 100 | $50.20 | $5,020 |
| 10/22/2007 | 7 | $50.09 | $351 |
| 10/24/2007 | 500 | $51.02 | $25,510 |
| 11/13/2007 | 1,253 | $51.29 | $64,266 |
| 11/13/2007 | 1,000 | $51.64 | $51,640 |
| 11/13/2007 | 1,000 | $51.27 | $51,270 |
| 11/13/2007 | 800 | $51.48 | $41,184 |
| 11/13/2007 | 800 | $51.42 | $41,136 |
| 11/13/2007 | 700 | $51.82 | $36,274 |
| 11/13/2007 | 700 | $51.28 | $35,896 |
| 11/13/2007 | 700 | $51.44 | $36,008 |
| 11/13/2007 | 600 | $51.55 | $30,930 |
| 11/13/2007 | 500 | $51.49 | $25,745 |
| 11/13/2007 | 500 | $51.63 | $25,815 |
| 11/13/2007 | 500 | $51.70 | $25,850 |
| 11/13/2007 | 500 | $51.30 | $25,650 |
| 11/13/2007 | 500 | $51.46 | $25,730 |
| 11/13/2007 | 400 | $51.53 | $20,612 |
| 11/13/2007 | 400 | $51.56 | $20,624 |
| 11/13/2007 | 400 | $51.59 | $20,636 |
| 11/13/2007 | 400 | $51.65 | $20,660 |
| 11/13/2007 | 400 | $51.76 | $20,704 |
| 11/13/2007 | 400 | $51.22 | $20,488 |
| 11/13/2007 | 400 | $51.33 | $20,532 |
| 11/13/2007 | 400 | $51.37 | $20,548 |
| 11/13/2007 | 400 | $51.39 | $20,556 |
| 11/13/2007 | 300 | $51.50 | $15,450 |

| | 11/13/2007 | 300 | $51.71 | $15,513 |
|---|---|---|---|---|
| | 11/13/2007 | 300 | $51.16 | $15,348 |
| | 11/13/2007 | 300 | $51.21 | $15,363 |
| | 11/13/2007 | 300 | $51.25 | $15,375 |
| | 11/13/2007 | 300 | $51.26 | $15,378 |
| | 11/13/2007 | 300 | $51.41 | $15,423 |
| | 11/13/2007 | 300 | $51.43 | $15,429 |
| | 11/13/2007 | 200 | $51.47 | $10,294 |
| | 11/13/2007 | 200 | $51.60 | $10,320 |
| | 11/13/2007 | 200 | $51.66 | $10,332 |
| | 11/13/2007 | 200 | $51.72 | $10,344 |
| | 11/13/2007 | 200 | $51.73 | $10,346 |
| | 11/13/2007 | 200 | $51.78 | $10,356 |
| | 11/13/2007 | 200 | $51.79 | $10,358 |
| | 11/13/2007 | 200 | $51.05 | $10,210 |
| | 11/13/2007 | 200 | $51.19 | $10,238 |
| | 11/13/2007 | 200 | $51.23 | $10,246 |
| | 11/13/2007 | 200 | $51.24 | $10,248 |
| | 11/13/2007 | 200 | $51.34 | $10,268 |
| | 11/13/2007 | 200 | $51.36 | $10,272 |
| | 11/13/2007 | 200 | $51.45 | $10,290 |
| | 11/13/2007 | 100 | $51.51 | $5,151 |
| | 11/13/2007 | 100 | $51.54 | $5,154 |
| | 11/13/2007 | 100 | $51.57 | $5,157 |
| | 11/13/2007 | 100 | $51.57 | $5,157 |
| | 11/13/2007 | 100 | $51.58 | $5,158 |
| | 11/13/2007 | 100 | $51.61 | $5,161 |
| | 11/13/2007 | 100 | $51.62 | $5,162 |
| | 11/13/2007 | 100 | $51.74 | $5,174 |
| | 11/13/2007 | 100 | $51.31 | $5,131 |
| | 11/13/2007 | 100 | $51.32 | $5,132 |
| | 11/13/2007 | 100 | $51.39 | $5,139 |
| | 11/13/2007 | 100 | $51.40 | $5,140 |
| | 11/13/2007 | 20,998 | $51.75 | $1,086,647 |
| | 11/14/2007 | 255 | $52.00 | $13,260 |
| | 11/16/2007 | 700 | $52.00 | $36,400 |
| | 11/16/2007 | 100 | $52.02 | $5,202 |
| | 11/16/2007 | 100 | $52.05 | $5,205 |
| | 11/19/2007 | 3,000 | $52.00 | $156,000 |
| | 11/19/2007 | 300 | $52.01 | $15,603 |
| | 11/19/2007 | 200 | $52.02 | $10,404 |
| | 11/19/2007 | 100 | $52.03 | $5,203 |
| | | 68,859 | | $3,512,648 |
| | | | | |
| SEAN CREAMER | 9/17/2007 | 373 | $45.32 | $16,904 |
| | | | | |
| | | | | |
| STEPHEN MORRIS | 8/1/2007 | 6,724 | $49.48 | $332,704 |
| | 9/4/2007 | 6,724 | $49.65 | $333,847 |
| | 10/1/2007 | 6,724 | $45.75 | $307,623 |
| | 11/1/2007 | 6,725 | $49.00 | $329,525 |
| | | 26,897 | | $1,303,698 |

- 14 -

| | | | | |
|---|---|---|---|---|
| VAUGHAN HENRY | 10/22/2007 | 5,000 | $49.79 | $248,950 |
| | 10/22/2007 | 746 | $49.92 | $37,240 |
| | | 5,746 | | $286,190 |
| | | | | |
| Grand Total: | | 178,879 | | $8,968,051 |

## LOSS CAUSATION/ECONOMIC LOSS

32.     During the Class Period, as detailed herein, Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated Arbitron's common stock price and operated as a fraud or deceit on Class Period purchasers of Arbitron's common stock by failing to disclose that the Company's scheduled implementation of its Portable People Meter ratings service in certain major markets was not performing according to internal expectations. When Defendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, Arbitron's common stock price fell precipitously as the prior artificial inflation came out. As a result of their purchases of Arbitron's common stock during the Class Period, Plaintiff and the other Class members suffered economic loss, *i.e.*, damages under the federal securities laws.

33.     Defendants' false and misleading statements had the intended effect and caused Arbitron's common stock to trade at artificially inflated levels throughout the Class Period, reaching as high as $54.33 per share on August 8, 2007.

34.     As a direct result of defendants' disclosure on November 26, 2007, Arbitron's common stock price fell precipitously. This drop removed the inflation from the price of Arbitron's securities, causing real economic loss to investors who had purchased the Company's securities during the Class Period.

35.     The more than 14% decline in the price of Arbitron's common stock after this disclosure came to light was a direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market. The timing and magnitude of Arbitron's common stock price

decline negates any inference that the loss suffered by plaintiff and the other Class members was caused by changed market conditions, macroeconomic or industry factors or Company-specific facts unrelated to the defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by plaintiff and the other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the prices of Arbitron's securities and the subsequent significant decline in the value of Arbitron's securities when defendants' prior misrepresentations and other fraudulent conduct were revealed.

### Applicability of Presumption of Reliance:
### Fraud On the Market Doctrine

36.   At all relevant times, the market for Arbitron's common stock was an efficient market for the following reasons, among others:

(a)   Arbitron's stock met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)   as a regulated issuer, Arbitron filed periodic public reports with the SEC and the NYSE;

(c)   Arbitron regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)   Arbitron was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

- 16 -

37.    As a result of the foregoing, the market for Arbitron's common stock promptly digested current information regarding Arbitron from all publicly available sources and reflected such information in Arbitron's stock price. Under these circumstances, all purchasers of Arbitron's common stock during the Class Period suffered similar injury through their purchase of Arbitron's common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

38.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Arbitron who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of
### the Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

39.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40.    During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were

misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

42.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Arbitron common stock. Plaintiff and the Class would not have purchased Arbitron common stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

43.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Arbitron common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of
### the Exchange Act Against the Individual Defendants

44.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.    The Individual Defendants acted as controlling persons of Arbitron within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of Arbitron, and their ownership of Arbitron stock, the Individual Defendants had the power and authority to cause Arbitron to engage in the wrongful conduct

- 18 -

complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

**WHEREFORE**, plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: April 30, 2008              COUGHLIN STOIA GELLER
                                     RUDMAN & ROBBINS LLP
                                   SAMUEL H. RUDMAN
                                   DAVID A. ROSENFELD
                                   MARIO ALBA JR.


                                   _____
                                             SAMUEL H. RUDMAN

                                   58 South Service Road, Suite 200
                                   Melville, NY 11747
                                   Telephone: 631/367.7100
                                   631/367.1173 (fax)

                                   Attorneys for Plaintiff


- 19 -

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 630 PENSION-ANNUITY TRUST FUND ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.    Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

*Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Greenfield Online, Inc., et al.*, No. 3:07-cv-01118-VLB (D. Conn.)

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

ARBITRON

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _19th_ day of _April_, 2008.

PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 630 PENSION-ANNUITY TRUST FUND

By: _____

Its: _____

- 2 -

ARBITRON

SCHEDULE A

SECURITIES TRANSACTIONS

**Acquisitions**

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 11/13/2007 | 100 | $51.42 |
| 11/13/2007 | 200 | $51.36 |
| 11/14/2007 | 100 | $51.26 |
| 11/14/2007 | 100 | $51.19 |