UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 630 PENSION-ANNUITY TRUST FUND, Individually and On Behalf of All Others Similarly Situated, | : : : : : | Civil Action No. 1:08-cv-04063-JGK  CLASS ACTION |
| Plaintiff, | : : | LEAD PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER |
| vs. | : : : | SUPPORT OF ITS MOTION TO STRIKE CERTAIN EXHIBITS ATTACHED TO THE DECLARATION OF WILLIAM A. |
| ARBITRON, INC., et al., | : : : | NOVOMISLE IN SUPPORT OF DEFENDANT ARBITRON INC.'S MOTION |
| Defendants. | : : | TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT |

Lead Plaintiff Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund ("Plaintiff") respectfully submits this reply memorandum of law in further support of its motion to strike certain exhibits attached to the Declaration of William A. Novomisle in support of Defendant Arbitron Inc.'s ("Arbitron" or "Defendant") Motion to Dismiss the Second Amended Class Action Complaint (the "SAC").

## I.  INTRODUCTION

In support of its motion to dismiss, Defendant Arbitron filed a declaration to which it attached 35 exhibits, 7 of which are extraneous to the SAC. Consequently, Plaintiff moved to strike various trade articles and press releases issued by the National Association of Black Owned Broadcasters ("NABOB") attached as Exhibits A-7; A-8 at pp. 4-8; A-11 at pp. 5-6; A-16; A-17 at 5-8; A-19 at 3-7; and A-25 (collectively, the "Disputed Exhibits") to the Declaration of William A. Novomisle dated December 17, 2009, and any references made to them, on the ground that none of the Disputed Exhibits are integral to, referenced in or attached to the SAC.

Defendant does not dispute the clear rule of law that, when deciding a motion to dismiss, the Court should confine its inquiry to the four corners of the complaint and may consider *only* documents attached to the complaint, documents expressly incorporated in the complaint, and public disclosure documents, including the contents of documents required to be filed with the Securities and Exchange Commission (the "SEC"). *See, e.g., In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 195 (S.D.N.Y. 2003). Nor does Defendant contest that the Disputed Exhibits do not fall within any of these categories. Rather, Defendant invites this Court to abandon the

well-defined standard on a motion to dismiss and engage in fact-finding by considering unauthenticated documents[1] that Defendant believes support its defenses.

Throughout Defendant Arbitron's Memorandum of Law in Opposition to Plaintiff's Motion to Strike ("Def. Opp."), Defendant erroneously argues that the Court may consider the Disputed Exhibits to determine whether Defendant's statements were materially false and misleading because, according to Defendant, the truth about the PPM system was on the market. However, on a motion to dismiss, courts should not consider extraneous documents where "[d]efendants offer the documents as evidence that [d]efendants did not commit securities violation[s]." *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 995 (S.D. Cal. 2005). While Defendant will certainly have an opportunity to present appropriate evidence on summary judgment or at trial, the rules simply do not permit it to present that purported evidence now.

## II. ARGUMENT

### A. PLAINTIFF'S MOTION TO STRIKE SHOULD BE GRANTED

The pleading stage is not the time to test evidence or resolve fact-specific defenses. To the contrary, in ruling on a 12(b)(6) motion to dismiss, a court must accept all allegations in a complaint as true and give plaintiffs the benefit of every reasonable inference that can be drawn. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). A court may only consider documents other than the complaint if they are referenced in the complaint, are "*integral to the complaint*," or are appropriate for the taking of judicial notice. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original) (citations omitted).

---

[1] Most of the Disputed Exhibits are not original copies, but rather, cut-and-pasted excerpts of trade articles of unknown origin created by Defendant without disclosing any source for finding the articles. Indeed, Plaintiff performed a website search for the articles in question and was unable to locate many.

Here, the Disputed Exhibits *are not* integral to, relied upon, attached to, or referenced in the SAC. The Disputed Sources are not public records that may be judicially noticed under Fed. R. Evid. 201. Moreover, the Disputed Exhibits are not the type of documents whose authenticity and accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b)(2). Nor do they fall into the narrow exceptions allowing review of a party's SEC filings that are alleged to contain the inadequate or misleading statements. Accordingly, the Disputed Exhibits and all arguments based upon them should be stricken.

> **1. Trade Articles and NABOB Press Releases Not Referenced in the SAC May Not Be Offered to Resolve the Fact-Specific Issue of Whether the Truth Was on the Market**

Defendant improperly relies on the following 23 articles from various sources and two press releases issued by the NABOB that purportedly dispute facts alleged in the SAC concerning whether the truth was on the market:

- An article purportedly published by *Inside Radio*, dated August 17, 2007, entitled, "Arbitron tells NABOB – PPM moves forward." (Novomisle Exs. A-7, A-8, A-25)

- An article purportedly published by *Radio & Records*, dated August 18, 2007, entitled "NABOB's Request To Arbitron." (Novomisle Exs. A-7, A-8, A-25)

- An article purportedly published by *All Access Music Group*, dated August 20, 2007, entitled, "Arbitron Denies NABOB Call For Slower PPM Rollout." (Novomisle Exs. A-7, A-8, A-25)

- An article purportedly published by *Inside Radio*, dated August 20, 2007, entitled, "Arbitron tells NABOB – 'PPM ratings are not flawed.'" (Novomisle Exs. A-7, A-8, A-25)

- An article purportedly published by *Radio and television Business Report*, dated August 20, 2007, entitled, "NABOB calls again for PPM slowdown." (Novomisle Exs. A-7, A-8, A-25)

- An article purportedly published by *R&R – Nashville Bureau*, dated August 20, 2007, entitled, "Update: NABOB Calls For Slower PPM Rollout; Arbitron Responds." (Novomisle Exs. A-7, A-8, A-25)

- An article purportedly published by *Business Wire*, dated September 24, 2007, entitled, "Landmark Presentation From ROI Media Solutions Highlights 'Urban Radio in the PPM World.'" (Novomisle Exs. A-11, A-25)

- An article purportedly published by the *New York Post*, dated September 29, 2007, entitled, "Quinn's Radio-Active." (Novomisle Ex. A-25)

- An article purportedly published by *FMQB*, dated October 1, 2007, entitled, "NYC Councilmember Unimpressed With PPM." (Novomisle Ex. A-25)

- An article purportedly published by *Radio and Records*, dated October 1, 2007, entitled, "NYC City Council Speaker Denounces PPM." (Novomisle Ex. A-25)

- An article purportedly published by *Radio Ink*, dated October 2, 2007, entitled, "N.Y. City Council Speaker Urges Arbitron to Drop PPM." (Novomisle Ex. A-25)

- An article purportedly published by *Inside Radio*, dated October 2, 2007, entitled, "Hearings into PPM – New York's City Council wants a face-to-face with Arbitron." (Novomisle Ex. A-25)

- An article purportedly published by *Radio & Television Business Report*, dated October 2, 2007, entitled, "Arbitron willing to work with NYC." (Novomisle Ex. A-25)

- An article purportedly published by *Radio & Records (R&R)*, dated October 3, 2007, entitled, "N.Y.C. City Council Speaker Denounces PPM." (Novomisle Ex. A-25)

- An article purportedly published by *FMQB*, dated November 9, 2007, entitled, "NABOB Asks Arbitron To Fix Flaws In PPM." (Novomisle Exs. A-16, A-17, A-25)

- An article purportedly published by *Radio & Records*, dated November 10, 2007, entitled, "NABOB Reacts To NYC PPM." (Novomisle Exs. A-16, A-17, A-25)

- An article purportedly published by *Inside Radio*, dated November 10, 2007, entitled, "NABOB says PPM fixes 'have done no good' and pushes for a delay." (Novomisle Exs. A-16, A-17, A-25)

- An article purportedly published by *MR Web*, dated November 12, 2007, entitled, "Arbitron Defends PPM after NABOB Criticism." (Novomisle Exs. A-16, A-17, A-25)

- An article purportedly published by *Radio Ink*, dated November 15, 2007, entitled, "Broadcasters PPM Sample 'Must Be Increased' – Soon." (Novomisle Exs. A-19, A-25)

- An article purportedly published by *Media Post*, dated November 15, 2007, entitled, "Dear Arbitron: Radio Industry Letter Delivers Broadside." (Novomisle Exs. A-19, A-25)

- An article purportedly published by *Mediaweek*, dated November 15, 2007, entitled, "PPM's Demos Need Fixing, Say Broadcasters." (Novomisle Exs. A-19, A-25)

- An article purportedly published by *R&R*, dated November 19, 2007, entitled, "Arbitron Responds to PPM Letter." (Novomisle Exs. A-19, A-25)

- An article purportedly published by *Radio and Records*, dated July 27, 2007, entitled, "Urban Radio Displeased With PPM." (Novomisle Ex. A-25)

- A press release purportedly issued by the NABOB, dated August 16, 2007. (Novomisle Ex. A-7)

- A press release purportedly issued by the NABOB, dated November 8, 2007. (Novomisle Ex. A-16)

Although Plaintiff did not attach any of the Disputed Exhibits to the SAC, incorporate them by reference, or refer to them in any way, Defendants nevertheless attempt to introduce the articles and press releases to dispute facts alleged in the SAC concerning what investors knew regarding problems associated with Arbitron's PPM system. "While news articles may be judicially noticed for the fact of their publication, they may not be judicially noticed for the truth of the matter asserted – that is, as 'adjudicative facts.'" *In re Merrill Lynch Tyco Research Sec. Litig.,* No. 03 CV 4080 (MP), 2004 U.S. Dist. LEXIS 2247, at *11 n.3 (S.D.N.Y. Feb. 18, 2004) (citing Fed. R. Evid. 201). The truth-on-the-market defense "is intensely fact-specific and is rarely an appropriate basis for dismissing a Section 10(b) complaint for failure to plead materiality." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000); *see also Hall v. Children's Place Retail Stores, Inc.,* 580 F. Supp. 2d 212, 229 (S.D.N.Y. 2008) (holding that whether the information was adequately disclosed "is a fact-intensive query that cannot be disposed of on a motion to dismiss"). Accordingly, the Court may not rely on the above articles or press releases to resolve issues of fact related to whether the truth was adequately disclosed to the market or whether the articles or press releases were

- 5 -

available to the public. Documents provided as evidence that a party had specific knowledge, such as the trade articles here, involve "a weighing of evidence as the matters are in dispute and would convert [a] Motion to Dismiss to a summary judgment proceeding." *Ass'n of Irritated Residents v. Fred Schakel Diary,* No. 1:05-CV-00707 OWW SMS, 2008 U.S. Dist. LEXIS 25257, at *14, n.4 (E.D. Cal. Mar. 28, 2008).

Defendant contends that the Disputed Exhibits are not being offered to resolve issues of fact raised by the SAC's allegations but merely for the fact of their publication. However, notwithstanding the fact that the truth-on-the-market defense is inherently fact-specific, the articles should not even be considered for the fact of their publication because Arbitron has not provided "true and correct" copies of the trade articles but, instead, it appears that the exhibits were cut and pasted to the Novomisle Decl. without offering a source for finding the articles (*i.e.*, website address, volume number, page number). Therefore, neither Plaintiff nor the Court can confirm the authenticity of these documents at this stage.[2]

Accordingly, the portions of Exs. A-7, A-8, A-11, A-16, A-17, A-19 and A-25 containing trade articles and NABOB press releases should be struck along with Defendant's arguments made utilizing these exhibits.

---

[2]   In any event, Defendant may not fraudulently misrepresent its PPM system as reliable and on track for commercialization and then hide behind several obscure non-public trade articles to argue that Arbitron's investors should have known that the PPM system was experiencing problems and would not be able to commercialize according to schedule. Once it chose to publicly discuss its PPM system, Defendant became obligated to speak accurately and fully. *See Caiola v. Citibank, N.A.,* 295 F.3d 312, 331 (2d Cir. 2002) (choosing to speak creates a duty to speak truthfully).

### 2.     The SAC's Reliance on the Fraud-on-the-Market Theory Does Not Permit the Court to Consider the Disputed Exhibits

Without citing any relevant case law, Defendant also argues that Plaintiff's reliance on the "fraud-on-the-market" theory "opens the door" for the Court to take judicial notice of the trade articles and NABOB press releases under the "truth-on-the-market corollary." Def. Opp. at 5. Notwithstanding the fact that whether the truth was on the market is a fact-specific issue that is inappropriate on a motion to dismiss, numerous courts have considered the precise argument that Arbitron attempts to use and have expressly rejected it.

For example, in *In re Cree Sec. Litig.,* 333 F. Supp. 2d 461, 470 (M.D.N.C. 2004), as here, defendants opposed plaintiffs' motion to strike on the ground that the plaintiffs brought their claims pursuant to a fraud-on-the-market theory, which defendants claimed permitted the court to review documents that had made their way into the market. Just as Arbitron does in this case, the Cree defendants argued that because the complaint indicated that plaintiffs relied on certain press releases and analysts' reports, the court was free to review any of those types of documents, even if they were not specifically mentioned in the complaint. *Id.* at 469. The court rejected defendants' argument and granted plaintiffs' motion to strike. *Id.* at 470-71. The court held that neither plaintiffs' reliance on the fraud-on-the-market theory nor plaintiffs' statement that they reviewed analysts' reports and press releases permitted defendants to support their motion to dismiss by submitting documents that were not specifically relied upon in the complaint. *Id.* at 470.

Faced with the clear and overwhelming case law rejecting their arguments, Defendant cites a number of clearly inapposite cases. *See, e.g., White v. H&R Block, Inc.*, No. 02 Civ. 8965, 2004 U.S. Dist. LEXIS 14522, at *37-*38 (S.D.N.Y. July 28, 2004) (dismissing complaint after considering information that was disclosed about a lawsuit in the Company's press releases, SEC filings and articles in nationally-recognized publications); *In re Yukos Oil Co. Sec. Litig.*, No. 04

Civ. 5243, 2006 U.S. Dist. LEXIS 78067, at *66-*67 (S.D.N.Y. Oct. 25, 2006) (taking judicial notice of nationally-recognized and reputable publications such as *Financial Times* and *Business Week*).  None of the cases Defendant cites support its argument that the "truth-on-the-market" defense allows the Court to take judicial notice of information in obscure sources such as trade articles and non-publicly filed press releases issued by a non-party.  *See* Fed. R. Evid. 201(b) ("a judicially noticed fact must be one not subject to reasonable dispute in that it is . . . (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned.").  Indeed, none of the cases even involve a dispute regarding the submission of documents.

Accordingly, in this case, Plaintiff's reliance on the fraud-on-the-market theory does not permit Defendant to submit exhibits that were not specifically cited in or attached to the SAC.

### 3. The Court Should Strike the NABOB Press Releases that Were Not Quoted in or Referenced in the SAC

Exhibits A-7 and A-16 are press releases issued by the NABOB, not Arbitron, and should be stricken for that reason alone.  *See In re OSI Pharms., Inc. Sec. Litig.,* No. 2:04-CV-05505 (JS) (WDW), slip op. at 15 (E.D.N.Y. Mar. 31, 2007) (attached hereto as Exhibit A) ("The Court will not consider the press releases of other companies.").  However, Defendant implicitly acknowledges that the SAC makes no mention of the NABOB press releases whatsoever and, instead, argues that because the SAC mentioned the NABOB and its executive director, James L. Winston, the Court should consider its press releases.  Defendant's argument is unavailing.  As Arbitron concedes, Plaintiff never cited to any press release issued by the NABOB, a third party to this action. Moreover, because the NABOB is a non-profit organization that is not publicly traded, its press

releases are not matters of public record, such as SEC documents. The NABOB press releases, therefore, cannot be judicially noticed. Thus, the Court should strike them.[3]

## III. CONCLUSION

For the foregoing reasons, it is respectfully submitted that Plaintiff's motion to strike the Disputed Exhibits and to strike Defendant's arguments relying on the truth of the matter asserted in the Disputed Exhibits, should be granted in its entirety.[4]

DATED: March 29, 2010

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
FAINNA KAGAN


*/s/ David A. Rosenfeld*
DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

*Lead Counsel for Plaintiff*

---

[3] Although Defendant wrongly presumes that the SAC relied upon the NABOB press releases in alleging that, "according to James L. Winston, the executive director of NABOB, the PPM systems were not measuring an adequate sample of African-Americans and Hispanics, which put stations with 'urban' and Hispanic formats at a disadvantage" (Def. Opp. at 3), the quote actually came from a *New York Times* article, dated September 9, 2008 (attached hereto as Exhibit B), that stated, "James L. Winston, the executive director of the National Association of Black Owned Broadcasters, said the people meters were not measuring an adequate sample of African-Americans and Hispanics, thus putting stations with urban formats at a disadvantage."

[4] Should the Court consider any of the Disputed Exhibits, Plaintiff respectfully requests that the Court convert the motion to dismiss into one for summary judgment and allow Plaintiff the opportunity to conduct discovery. *See* Fed. R. Civ. P. 12(d); *In re Parmalat Sec. Litig.*, 497 F. Supp. 2d 526, 533 (S.D.N.Y. 2007) (converting motion to dismiss to one of summary judgment because extraneous exhibits were not subject to judicial notice).

**CERTIFICATE OF SERVICE**

      I, David A. Rosenfeld, hereby certify that, on March 29, 2010, I caused a true and correct copy of the foregoing document to be served: (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to any additional counsel.

                                              */s/ David A. Rosenfeld*
                                                David A. Rosenfeld