UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

PLUMBERS AND PIPEFITTERS LOCAL UNION
NO. 630 PENSION-ANNUITY TRUST FUND,
*individually and on behalf of others similarly situated*,

                                        Plaintiff,

                  -v-

ARBITRON, INC. et al.,

                                       Defendants.

------------------------------------------------------------X

08 Civ. 4063 (PAE)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/14/11

**PAUL A. ENGELMAYER, District Judge:**

This decision addresses a discovery dispute. Defendant Arbitron, Inc., moves for an order directing the lead plaintiff, Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund (Plaintiff), to disclose the names of 11 former Arbitron employees whom the Complaint designates as "Confidential Informants" (CIs). Arbitron also seeks an order directing Plaintiff to produce all documents that these 11 CIs provided to Plaintiff's counsel.

For the reasons that follow, Arbitron's motion to compel disclosure of the names of the CIs is granted, subject to the opportunity the Court will afford the Plaintiff to substantiate, as described herein, its claim that disclosure of a CI's name may result in retribution. Arbitron's motion to compel production of all documents provided to the Plaintiff by the CIs is also granted, to the extent that such documents are responsive to other valid discovery requests in this case.

Case 1:08-cv-04063-PAE   Document 129   Filed 11/14/11   Page 2 of 18

2

I.  **Background**

The Second Amended Complaint (SAC) in this securities class action litigation was filed on October 19, 2009. It alleges that Arbitron and two officers, Stephen B. Morris and Sean R. Creamer, violated Section 10(b) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder, by making false and misleading statements about Arbitron's planned rollout of a technology known as the "Portable People Meter" (PPM). In essence, the SAC alleges that, between July 19, 2007, and November 26, 2007, the defendants failed to disclose material information regarding various problems and delays adversely affecting the scheduled PPM rollout. The SAC further alleges that defendants made various statements tending to falsely portray the PPM technology as "on schedule" or "on track" for a December 31, 2007 rollout.

On September 30, 2010, this Court denied Arbitron's motion to dismiss. *See Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc. et al.*, No. 08-CV-4063 (S.D.N.Y. Sept. 24, 2010) (Dkt. No. 80).[1] Discovery, which had been stayed pursuant to the automatic stay provision of the Private Securities Litigation Reform Act, *see* 15 U.S.C. § 78u-4(b)(3)(B), commenced soon thereafter. Under the schedule in place, fact discovery is due to close February 28, 2012; expert discovery closes May 3, 2012. Document production is substantially complete. Depositions will commence shortly but have been deferred pending resolution of the instant dispute. A protective order negotiated by the parties is in place governing the handling of confidential discovery materials.

---

[1] The Court's decision on the motion to dismiss supplies a more detailed summary of Plaintiff's allegations. The Court also denied Morris' motion to dismiss, while granting Creamer's. At the time of the motion to dismiss, the judge assigned to this matter was the Hon. John G. Koeltl, to whom this case was assigned until October 5, 2011. On September 6, 2011, Judge Koeltl granted Plaintiff's motion to certify this action as a class action, pursuant to Fed. R. Civ. P. 23(a) and (b)(3). *See Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Arbitron, Inc. et al.*, No. 08-CV-4063 (S.D.N.Y. Sept. 9, 2011) (Dkt. No. 115).

Arbitron presently seeks this Court's intervention in connection with two closely related discovery disputes.

*Identification of Confidential Informants*: Arbitron asks the Court to enforce an interrogatory (Interrogatory No. 1) which directs Plaintiff to "specifically identify all Confidential Informants referenced in the Complaint by the Confidential Informant number in the Complaint, and include the person's full name, present or last known address, and present or last known place of employment."

Plaintiff has refused to identify these 11 persons. It has given two independent reasons. First, Plaintiff asserts that it has fully complied with any duties that Federal Rule of Civil Procedure 26 imposes as to identification of the CIs. Plaintiff notes that – to comply with its required initial disclosures under Rule 26(a)(1)(A) – it has furnished the defense with a list of 83 current or former Arbitron officers or employees likely to have discoverable information. Plaintiff represents that this list contains the names of all 11 CIs (although they are not identified as such).

Second, Lead Plaintiff asserts that the attorney work product doctrine protects it from having to reveal the CIs' identities. As to the latter, Plaintiff argues that, were it to disclose the CIs' identities,

> Arbitron would be able to discern which witnesses counsel for Lead Plaintiff considers important, thereby revealing counsel for Lead Plaintiff's mental impressions, opinions, and/or legal theories regarding information provided by these CIs. Specifically, disclosing this information is tantamount to revealing how counsel for Lead Plaintiff analyzed and used the information provided by the CIs, as well as the conclusions, opinions, and potentially even trial strategy developed during counsel for Lead Plaintiff's investigation.

Plaintiff also argues that the SAC's descriptions of the CIs permit Arbitron to winnow out various people listed on its initial disclosure list. Thus, the task for Arbitron of identifying the

CIs on its own steam is less substantial than initially might appear. Plaintiff finally states that "the CIs have legitimate concerns that they will suffer retaliation regarding their current or future employment in the industry if they are identified."

Arbitron disputes both arguments. Particularly salient here, it disputes that the work product doctrine applies to the CI's identities. It asserts that even if any limited work product protection applies to those identities, that protection is overcome by defendants' interest in efficiently discovering relevant information. As Arbitron put the point in its moving papers: "Arbitron should not be forced to depose as many as 83 persons to learn the identity of 11 CIs."

*Documents produced by the CIs*: In the second discovery dispute, Arbitron asks this Court to enforce a document request, which, as narrowed by the parties, calls upon Plaintiff to produce all documents provided to it by the CIs. The parties have largely treated this dispute as derivative of the first.

On November 8, 2011, the Court held a lengthy, on-the-record, telephone conference with counsel to discuss these motions.

## II. Discussion

### a. Fed. R. Civ. P. 26(B)(1)

Management of discovery lies within the broad discretion of the district court. *See Baguer v. Spanish Broadcasting Systems, Inc.*, 423 F. App'x 102, 103 (2d Cir. 2011) (summary order); *Allied Maritime, Inc. v. Descatrade SA*, 620 F.3d 70, 74 (2d Cir. 2010); *In re IPO Securities Litigation*, 471 F.3d 24 (2d Cir. 2006).

The threshold discovery issue here is whether, as Lead Plaintiff has argued, its disclosure duties under Fed. R. Civ. P. 26 with regard to the CIs were satisfied by including their names in its initial disclosures, among a list of 83 Arbitron officers or employees. *See* Fed. R. Civ. P.

26(a)(1)(A)(i) (requiring parties to identify the names and contact information of persons "likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses"). Specifically, the question is whether the additional fact now sought by Arbitron – the names of the 11 CIs – is relevant information that "appears reasonably calculated to lead to the discovery of admissible evidence" and thus responsive to a separate part of Rule 26, Rule 26(b)(1).

The answer to that question is clearly yes, as a review of the SAC demonstrates. The SAC prominently states that its allegations of securities fraud "are supported by the first-hand knowledge of eleven (11) confidential informants." It describes these 11 as "former Arbitron employees who provided facts from various departments within the [c]ompany," and who "served in positions at Arbitron which provided them with access to the information they are alleged to possess." SAC ¶ 33. The SAC then devotes 11 paragraphs to setting out, to varying degrees, the backgrounds and qualifications of each of the CIs. SAC ¶¶ 34-44.

The SAC proceeds to quote the CIs extensively, and/or to paraphrase their accounts of various allegedly material deficiencies relating to the PPM rollout which, the SAC centrally alleges, Arbitron either failed to disclose or affirmatively concealed. Thus, CIs 1, 2, 3, 6, and 7 are quoted at length in a section of the SAC describing Arbitron's problems with recruiting panelists to participate in the PPM surveys, SAC ¶¶ 74-80; CIs 1, 2, and 4 are quoted in a section describing problems with PPM data reliability and methodology, SAC ¶¶ 83, 85, 91-92; CIs 2, 5, 9, and 10 are quoted in a section describing the PPM's system's underrepresentation of the ages 18-34 and minority demographics, SAC ¶¶ 93, 96-97, 100-101; and CIs 1 and 8 are quoted in a section describing a shortage of PPM equipment, SAC ¶ 104. In a section summarizing Arbitron's allegedly false and misleading statements, the SAC also cites data provided by CI 1 as

a basis to impeach the company's claim that installation of the PPM equipment had been successful, SAC ¶ 111.

In light of these details, Rule 26(b)(1) clearly requires that the names of the 11 CIs be produced (unless they are held to be privileged). Simply put, knowing who the CIs are would help the defense to find and interview and/or depose them. Inasmuch as Lead Plaintiff has represented that the 11 CIs have "firsthand knowledge" of specific facts tending to establish Arbitron's liability for securities fraud, such interviews or depositions are reasonably likely themselves to constitute or reveal admissible, if not highly probative, evidence. Furthermore, it is reasonable to expect that defense counsel would then pursue leads from information provided by the CIs, and that this follow-on investigation might in turn yield other admissible evidence.[2] *See In re Marsh & McLennan Sec. Litig.*, No. 04-CV-8144, 2008 WL 2941215, at *3 (S.D.N.Y. July 30, 2008) ("[b]ecause Lead Plaintiffs relied upon the CWs in drafting the [Complaint], the CWs possess discoverable information") (citations omitted); *In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 427 (N.D. Cal. 2007) (holding that "the identities of the [confidential witnesses] are relevant to Plaintiff's claims," and required to be revealed in response to interrogatories, even where the complaint that had mentioned these witnesses had since been dismissed and had been succeeded by an amended complaint that removed references to them); *In re Aetna, Inc. Sec. Litig*, No. Civ. A. MDL 1219, 1999 WL 354527, at *2 (E.D. Pa. May 26, 1999) (names and

---

[2] Identifying the CIs would also help the defense to more accurately assess the strength of the SAC's claims and Plaintiff's case-in-chief. For example, the identity of a CI to whom damaging facts are attributed may shed light on whether the CI in fact had a firsthand basis for his or her allegations, or had been misquoted in the SAC. *See, e.g., Campo v. Sear Holdings Corp.*, 371 F. App'x 212, 216 (2d Cir. 2010) (summary order) ("neither of the confidential witnesses . . . offered testimony supporting plaintiffs' allegations"). It may also help the defense assess whether there were reasons to credit, discredit, or view in a different context particular allegations attributed to that CI.

addresses of confidential informants to whom factual allegations are attributed in the Complaint "are obviously 'relevant to the subject matter involved in the pending action' and [are] 'reasonably calculated to lead to the discovery of relevant evidence'").

### b. The Attorney Work Product Doctrine

The Court therefore turns to what it regards as the heart of the matter, which is whether the names of the 11 CIs referenced in the SAC are protected from disclosure under the attorney work product doctrine.

The attorney work product doctrine was first articulated in *Hickman v. Taylor*, 329 U.S. 495 (1947). It was later partially codified in Fed. R. Civ. P. 26(b)(3)(B). The work product doctrine is based on the recognition that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel"; as such, it protects such materials as notes, internal memoranda, statements, and mental impressions from disclosure to the attorney's adversary. *Hickman*, 329 U.S. at 510. Under the doctrine, "opinion work product," which "reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' . . . is entitled to greater protection than fact work product." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007) (citing *United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998) (quoting Fed. R. Civ. P. 26(b)(3))). But, "[t]o be entitled to protection for opinion work product, the party asserting the privilege must show 'a real, rather than speculative, concern' that the work product will reveal counsel's thought processes 'in relation to pending or anticipated litigation.'" *Id.* at 183-84 (citing *In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003) (quoting *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 825 F.2d 676, 680 (2d Cir. 1987))).

The party asserting work product protection bears the burden of establishing all of its elements, specifically, that the materials sought were "'prepared principally or exclusively to assist in anticipated or ongoing litigation.'" *In re Initial Pub. Offering Sec. Litig.*, 220 F.R.D. 30, 34 (S.D.N.Y. 2003) [hereinafter *IPO Securities Litigation*] (quoting *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996)). Where it applies, "the work product protection is a qualified protection; it is not absolute"; it "can be overcome by a showing that the party seeking discovery (1) has substantial need of the materials, and (2) that the party is unable, without undue hardship, to obtain the substantial equivalent of the materials by other means." *Id.* (citations omitted).

In this Court's view, the names of the persons identified in the SAC as confidential informants are not entitled to any work product protection; and if any work product protection does apply to these names, it is minimal.[3] In the first instance, it is important to isolate just how limited a disclosure is at issue in this case. Plaintiff has already disclosed the fact that these 11 people (and 72 others), all identified to the defense by name, likely possess discoverable information. Plaintiff has also already disclosed important aspects of what the 11 CIs have stated in interviews about the events at issue in this case. To the extent Lead Plaintiff has chosen not to reveal other parts of the CIs' witness statements, Arbitron's present motion does not seek their disclosure. All that Arbitron seeks to learn is which of the 83 names identified by Plaintiff correspond to the 11 CIs described in the SAC. This would expedite the discovery process, for all parties, by allowing Arbitron (as it has explained) to focus its depositions immediately on these important "firsthand" witnesses, rather than having to engage in a costly process of

---

[3] A motion to compel disclosure of a confidential witness's name also implicates the *witness's* interest in maintaining confidentiality, and that interest may carry the day in particular cases, but that distinct interest is not implicated by the work product doctrine. The Court's assessment of that interest as applied to this case is discussed *infra*, in Section C.

elimination in which it would take numerous depositions simply to smoke out which of the 83 disclosed names are the 11 CIs.

It is difficult to see how syncing up the 11 CIs with these already disclosed names would reveal Plaintiff's counsel's mental impressions, opinions, or trial strategy. Plaintiff's argument on this point was that opposing counsel, upon learning the names of the 11 CIs, might surmise that Plaintiff's counsel had judged the other 72 named witnesses to be less helpful witnesses for its cause. Perhaps so, but any such surmise would be just that, surmise – not a reliable indicator of counsel's actual thought processes. There are many other plausible reasons for a counsel not to list a witness in a complaint (as a CI or by name) apart from an assessment that the witness was peripheral. These may include, among others, the witness's insistence on not being quoted, even pseudonymously, until later in the case; and a strategic judgment by counsel that it is best *not* to unduly showcase or "out" a particularly potent trial witness early in the life-cycle of a case. The Court thus finds, on the facts here, that an insufficient showing has been made that opinion work product would be implicated by granting the pending motion. *See In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d at 183-84.

It is also relevant to the Court's work product analysis that the CI's names will almost certainly eventually become known during this litigation, if Arbitron pursues the deposition process long enough (as it has represented that it will given the CIs' centrality). In colloquy, counsel for both sides acknowledged that, if asked in a deposition whether they had spoken to Plaintiff's counsel, the 83 named witness would each be obliged to answer (*i.e.*, no privilege would apply). Both counsel also acknowledged that such a witness would be obliged to answer whether he or she had made statements to Plaintiff's counsel along the lines of those that the SAC attributed to a particular CI. These lines of examination would likely reveal which

witnesses are the CIs.[4]  Denying the instant motion would thus not permanently keep the 11 CIs' identities under wraps.  Instead, it would merely elongate the deposition discovery process, imposing costs and burdens on all parties.[5]

In holding that the CIs' names in this case are not entitled to work product protection, the Court is, finally, mindful that Plaintiff has utilized the CIs offensively.  By attributing extensive factual allegations to the 11 CIs in the SAC, Plaintiff buttressed its complaint, presumably with the goal of protecting it against dismissal.  It is, of course, entirely proper and common for a plaintiff to rely on confidential witnesses in a complaint, and attributions to such witnesses may and often are credited on motions directed to the pleadings.  *See Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000).  But, once the discovery phase begins, the balance of interests shifts.  The priority becomes reciprocal and robust fact-gathering as the parties seek to discover relevant evidence.  *See IPO Securities Litigation*, 220 F.R.D. at 37.  The parties' interrogatories – including interrogatories aimed at helping the propounding party assess which witnesses are most likely to possess probative, admissible evidence – are an integral part of this process.

In the Court's view, where a party has attempted to satisfy the pleading requirements of the PSLRA "by 'showcasing' statements from a limited number of confidential witnesses, it may not thereafter refuse to disclose who they are" on grounds of work product.  *Ross v. Abercrombie*

---

[4] The task of identifying the CIs' identities via the deposition process is further likely to be successful because the Complaint identifies (at least generally) each CI's job titles, duties, and approximate tenure at the company.  *See, e.g.*, SAC ¶ 36 ("CI 3 is a former PPM Research Associate employed by Arbitron from July 2007 through March 1, 2008, in Columbia, Maryland. CI 3 was responsible for recruiting individuals into the Diary and the PPM survey methods."); *id.* ¶ 43 ("CI 10 is a former Vice President of Marketing for Arbitron in Columbia, Maryland. CI 10 was employed by Arbitron from approximately 2000 until September 2007"); *see generally id.* ¶¶ 33-44.

[5] In colloquy, Plaintiff's counsel stated that he himself presently expects to take pretrial depositions of some of the CIs.  Any such deposition would itself tend to reveal that the deponent was the CI.

& *Fitch Co.*, No. 2:05–CV–0819, 2008 WL 821059, at *3 (S.D. Ohio Mar. 24, 2008); *id.* ("partial disclosure of information protected by the work product doctrine may constitute a waiver, and [] a party is not permitted to use such doctrines as both a shield and a sword."); *cf. NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 142 (N.D.N.Y. 2007) ("Just as the attorney-client privilege cannot be used as a shield and sword, neither can a work product document, especially one that does not include an attorney's impression, opinions, or strategies."); *Computer Assoc. Int'l, Inc. v. Simple.com, Inc.*, No. 02-CV-2748, 2006 WL 3050883, at *3 (E.D.N.Y. Oct. 23, 2006) (as to assertions of fact work product, noting the need for "courts to 'balance the policies to prevent sword and shield litigation tactics with the policy to protect work product'") (citing *In re Echostar*, 448 F.3d 1294, 1302 (Fed. Cir. 2006)).

Even assuming some minimal work product protection applies to the 11 CIs' identities, such protection would be overcome in this case. Arbitron's counsel has represented that counsel and human resources personnel at Arbitron have compared the list of 83 named former employee witnesses against the SAC's descriptions of the 11 CIs; the goal was to identify which of the 83 can be eliminated as a CI. That review eliminated between 12 and 17 of the 83.[6] Depending on how quickly the 11 CIs are identified in depositions, the deposition process aimed at ensuring that all 11 CIs were deposed could therefore entail as many as 66 to 71 depositions. Independent of these depositions, Arbitron presently intends to take approximately 6 to 10 depositions; Plaintiff expects to take approximately 20.

---

[6] In colloquy, the Court probed with counsel the nature of this screening process. The Court was assured that Arbitron's screening had eliminated both (1) current employees (all 11 CIs are former employees), and (2) employees whose job titles and functions are inconsistent with the descriptions of the CIs.

The deposition process in this case thus could potentially vary in scope by threefold or more depending on whether Arbitron's interrogatory as to the names of the CIs is enforced. In the Court's view, Arbitron has shown both a "substantial need" for these names, and that it would entail "undue hardship[] to obtain the substantial equivalent . . . by other means." *IPO Securities Litigation*, 220 F.R.D. at 35. Relevant in this regard, Arbitron is a mid-size company (between 1,200 and 1,500 employees during the events at issue) and its counsel has represented that the cost of preparing for and taking dozens of additional depositions of former employees would impose a substantial expense on the company.[7]

On the facts before it, the Court, balancing the relevant considerations, does not believe that the work product doctrine compels Arbitron (or, derivatively, its shareholders) to bear these costs. The discovery rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. These goals are disserved by forcing a party, in the name of an opponent's evanescent work product interest, to play a high-cost game of "Where's Waldo?".

In reaching this conclusion, the Court has carefully reviewed the many cases addressing similar applications. Although many such cases turn on particular facts, it is safe to say that the case law is not unitary as to the application of the work product doctrine to motions to compel the names of a witness referenced but not named in a complaint. Of these cases, the Court found the analysis in four particularly instructive.

---

[7] Relative to other securities class-action litigations premised on claims that a company's stock price dropped as a result of the revelation of a material misstatement or omission, this litigation is also properly classed as "mid-size." Counsel estimated that the outer conceivable damages, assuming that Arbitron's stock's entire stock-price drop in November 2007 was attributable to actionable misstatements or material omissions, would be approximately $55 million. The volume of documents produced (as represented to the Court, a little over 200,000 pages by the defendants; 75 pages by Plaintiff; and 15,700 by third parties) is not large by the standards of present-day securities class-action litigation.

In *In re Aetna, supra,* the court enforced interrogatories that sought the names of witnesses identified in the complaint by such terms as "a former regional general manager of Aetna" or "a former Aetna vice-president of sales and customer service." The court held that the names of such individuals were not protected by the work product doctrine. It noted that "[p]laintiffs chose to include this allegation in their Second Amended Complaint and chose the way in which this allegation was framed. Defendants are entitled to the discovery of the name and address of those persons described in the Second Amended Complaint." 1999 WL 354527, at *2. The court also held that disclosure of the names would not reveal opinion work product; and that even if any "minimal work product content" were implicated, it was outweighed: "Without the Court's intervention, Defendants would be forced to engage in a time-consuming and expensive effort to ferret out the veritable needle in the haystack." *Id.* at *4 (any qualified protection "must yield to the need of the Defendants to get on with discovery in this case").

In *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 631 (N.D. Ga. 2002) [hereinafter *In re Theragenics*], the court addressed a set of interrogatories, upholding two (No. 2 and No. 5) which sought the names of persons referenced but not named in the complaint. Rejecting the claim that such information was "core work product," the court observed that identifying such persons "tells the defendants nothing new about the mental processes of the plaintiff's lawyers, leaving the policy behind the work product doctrine intact." *Id.* at 635 (citing *American Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n*, 107 F.R.D. 258, 261 (N.D. Ill. 1985)). The Court added: "The disclosure sought here will provide minimal, if any, disclosure of an attorney's thought processes. It will not reveal Plaintiffs' litigation strategy. Certainly, the work product doctrine was not devised to protect all work by attorneys in the global sense." *Id.* at 636.

In *In re Harmonic, supra*, the court similarly enforced interrogatories as to the names of five confidential witnesses, holding that the work product doctrine does not apply. It noted, on facts closely akin to those here, that because plaintiff's initial disclosures had already listed the five among the 77 witnesses listed on its initial disclosures, "[t]he issue here . . . is not *if* the CWs' identities will ever be discovered, but rather *when* they will be discovered." 245 F.R.D. 424, 427 (N.D. Cal. 2007) (citation omitted). Thus, "there is no cognizable strategic advantage to be gained by Plaintiffs in withholding the identities. The only effect is to force the Defendants to expend resources on taking the depositions of 77 people in order to obtain the information." *Id.* at 428. The court rejected the claim that revealing the CWs' names would reveal trial strategy. "Plaintiffs have already revealed their legal strategy by including the CWs' statements in the SAC." *Id.* As in *Aetna*, the court concluded by holding that even if some *de minimus* factual work product were implicated, that interest was outweighed by "the interest in discovery." *Id.* at 429.

Finally, in *In re Marsh & McLennan, supra,* a case brought in this District, the court upheld a discovery demand seeking production of "documents sufficient to identify each and every" of the 17 confidential witnesses referenced in the complaint. The court held that any privilege that attached to these identities is "limited in nature," because those identities bear only an "attenuated" relationship to an attorney's case strategy or mental impressions, and reveal no more "about an attorney's mental processes than does the identification of a witness by name in the complaint itself." No. 04-CV-8144, 2008 WL 2941215, at *3 n.5 (S.D.N.Y. July 30, 2008). The court also noted that CWs who will serve as trial witnesses will necessarily be identified; and as to others, it may be possible to deduce their identities from the complaint; thus, "there is actually little confidentiality at stake." *Id.* Further, even if some work product protection

attached to the identities, it was outweighed, because identifying the CWs by other means would take a "substantial number" of depositions. *Id.* at *4.[8]

The Court therefore holds that the work product doctrine does not protect Plaintiff from having to respond to Interrogatory No. 1.

### c. The Witnesses' Interest in Avoiding Retribution

---

[8] Although it addresses an issue not raised here – a discovery demand that plaintiff identify the names of all persons alleged in its pleadings to have engaged in allegedly wrongful business practices – the decision in *IPO Securities Litigation, supra,* also from this District, also offers relevant guidance. Upholding that demand, the court there noted that the work product privilege "does not . . . ordinarily protect the identities of . . . witnesses." 220 F.R.D. 30, 34, n.23 (S.D.N.Y. 2003) (citing Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 302-03 (1997)). The court in *IPO Securities Litigation* also distinguished as inapposite the circumstance in which a party demands a list of persons whom opposing counsel has interviewed. *Id.* at 35. That circumstance – in which one party is essentially seeking, and potentially piggybacking on, a roadmap of an adversary's pretrial investigation – implicates core policies behind the work product doctrine. A number of the cases that Plaintiff has cited here, in fact, arise from such a demand or ones similar to it, not from an interrogatory akin to the one here. *See, e.g., Electronic Data Systems Corp. v. Steingraber*, No. 4:02-CV-225, 2003 WL 21653405, at *1 (E.D. Tex. July 9, 2003) (interrogatory asked defendant "to identify individuals who have been interviewed concerning the relevant allegations in the case"); *In re Ashworth, Inc., Sec. Litig.*, 213 F.R.D. 385, 386 n.1 (S.D. Cal. 2002) (interrogatory asked adversary to identify each former employee "who has provided information which forms the basis for any allegations" in the complaint); *In re Gupta Corp. Sec. Litig.*, 1995 U.S. Dist. LEXIS 21847, at *3 (N.D. Cal. July 18, 1995) (interrogatories "asked counsel for plaintiff to identify each person counsel for plaintiff had contacted about this case and to disclose what each such person told counsel for plaintiff"); *Commonwealth of Massachusetts v. First Nat'l Supermarkets, Inc.*, 112 F.R.D. 149 (D. Mass. 1986) (interrogatory asked adversary, *inter alia*, to "[i]dentify each person who was interviewed in connection with any . . . investigation"); *Board of Education of Evanston Township High School*, 104 F.R.D. 23, 32 (N.D. Ill. 1984) (interrogatory asked adversary "to identify anyone they may have interviewed" concerning the subject of the litigation). The Court acknowledges, however, contrary authority as to the application of the work product doctrine to the identification of confidential witnesses named in a complaint. *See, e.g., In re SLM Corp. Sec. Litig.*, No. 08-CV-1029, 2011 WL 611854 (S.D.N.Y. Feb. 15, 2011); *In re Veeco Instruments, Inc. Sec. Litig.*, No. 05-MD-1695, 2007 WL 274800 (S.D.N.Y. Jan. 29, 2007); *In re MTI Technology Corp. Sec. Litig.*, No. SACV 00–0745 DOC, 2002 WL 32344347 (C.D. Cal. June 13, 2002). For the reasons set forth in this opinion, the Court finds the analysis in *In re Aetna, In re Theragenics, In re Harmonic,* and *In re Marsh & McLennan* the most persuasive.

A confidential witness may have a legitimate interest in non-disclosure, where revealing his or her name may lead to retaliation in a current or future job. This interest belongs to the witness – it is not one protected by the attorney work product doctrine. In an appropriate case, a court may decline to order disclosure of a CI's name, or fashion an appropriate protective order, in order to guard against this risk.

In this case, Plaintiff asserts generically that the 11 CIs "have legitimate concerns" about such retaliation. However, there is no indication that any of these witnesses expressed concerns specific to themselves that led to the confidentiality designation. Rather, this designation appears to have been made on a global basis: Every Arbitron employee (save the individual defendants) to whom statements are attributed in the SAC is identified as a CI. In colloquy, Plaintiff's counsel represented that each of the 11 CIs had been told counsel would "do what we can" to keep the CI's name confidential, but that it was possible that the CI's name would be disclosed. Plaintiff's counsel further represented that each of the 11, aware of this possibility, consented to being identified as a CI in the complaint. The Court further observes that each of the 11 CIs is described in the SAC as a former Arbitron employee, which would appear to limit (although not eliminate) the risk of future employment retaliation for supplying information here.

On this record, there is no reliable, non-conclusory basis to find that any of the CIs here faces a risk of retaliation sufficient to justify non-disclosure of his or her name to the defense. *See Rahman v. Smith & Wollensky Restaurant Group, Inc.*, No. 06-CV-6198, 2007 WL 1521117, at *11 (S.D.N.Y. May 24, 2007) ("the mere spectre of retaliation, without more, does not establish good cause for [a protective order]"); *In re IPO Securities Litigation*, 220 F.R.D. at *37 (ordering disclosure of witness names where "plaintiffs have failed to show the 'particular and

17

specific demonstration of fact . . .' that is necessary to support a showing of good cause") (citation omitted).

The Court is, however, mindful that additional facts bearing on this concern may be known to Plaintiff's counsel. Accordingly, the Court will afford Plaintiff's counsel one week (until Monday, November 21, 2011) to submit an *ex parte* affidavit setting forth particularized facts (if any) known to counsel at the time of the original confidentiality designation that would substantiate the concern that disclosure of a particular CI's name would result in retribution. Upon review of such an affidavit, the Court will promptly determine whether these facts justify (a) non-disclosure, (b) disclosure but with limitations on further dissemination to be set forth in an appropriate protective order, or (c) a follow-up telephonic inquiry of the witness by the Court, to be arranged and attended by Plaintiff's counsel. If by that date no such affidavit has been submitted as to a particular CI, Plaintiff that day shall disclose the CI's name to the defense.[9]

### d. Arbitron's Request for Documents

Turning, finally, to Arbitron's request for the production of all documents that the CIs have provided to Plaintiff (including Plaintiff's counsel), it follows from the discussion above that the work product doctrine does not protect Plaintiff from this request. However, that is not the end of the inquiry. Although this objection was not raised by Plaintiff, in the Court's view, this request is overbroad, in that it would sweep in documents (if any) provided by the CIs that are of no relevance whatsoever to this litigation. Put differently, the mere fact that a CI produced a document to Plaintiff does not make it relevant. Relevancy turns on the document's content.

---

[9] To the extent the parties believe that limitations as to the parties' use or dissemination of the CI's names prior to trial are appropriate and would not interfere with discovery, the Court will entertain a proposed protective order. For example, the parties might agree that witnesses will not be identified in publicly filed court papers as having been CIs, without leave of the Court to do so.

The Court therefore directs the Plaintiff to produce all documents provided by the CIs that are responsive to any other valid document request in this case. This modification is designed to ensure that only relevant documents are produced. The Court expects that, as to each document that is produced, the producing party will identify by name the source of the document. Plaintiffs therefore are directed, as to any document provided by a CI responsive to the document request as modified by the Court, to indicate to the defense the name of the person who provided that document.

## CONCLUSION

For the reasons stated:

1. Arbitron's motion to compel disclosure of the names of the CIs is granted. The CIs' names are to be provided to the defense by November 21, 2011. However, Plaintiff's counsel is authorized to submit to the Court, by November 21, 2011, an *ex parte* affidavit setting forth, with particularity, any facts known to Plaintiff's counsel at the time of the initial confidentiality designation that would substantiate the concern that disclosure of a particular CI's name would result in retribution. As to any CI addressed in such affidavit, Plaintiff's obligation to identify the CI to the defense is stayed pending the Court's review of the affidavit.

2. Arbitron's motion to compel production of all documents provided to Plaintiff by the CIs is also granted, to the extent that such documents are responsive to other valid discovery requests in this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: November 14, 2011
       New York, New York